■ In the Matter of ABRAHAM HILTZIK, as Representative Broker of A. A. HILLS Co., INC., Petitioner, v. JOHN P. LOMENZO, as Secretary of State of the State of New York, Respondent.— Determination of respondent dated May 21, 1973, which, after a hearing, found petitioner guilty of demonstrated untrustworthiness pursuant to section 441-c of the Real Property Law and indefinitely suspended his real estate broker's license until the filing of proof of reimbursement in the sum of $1,200 to his client Kwatinetz, annulled, on the law, without costs and without disbursements. In April, 1970 Kwatinetz asked petitioner, an attorney and broker, to find a buyer for her residence at the price of $23,000 net. Petitioner, who was then representing Kwatinetz's son in a property transaction, declined to do so and urged that she see brokers in her neighborhood since they would be more familiar with the property's value. Those brokers all informed Kwatinetz that her asking price was too high and when, after several months they produced no buyers, she again importuned petitioner to undertake to sell her home, he reluctantly agreed to do so. Petitioner, who had previously inspected the premises, sent at least three prospective buyers to see the property, but to no avail. Additionally, he contacted Kahn, a real estate broker whom he had known for a number of years, and inquired if he would purchase the residence for $23,000 net to the seller plus commission. He insisted that the contract be unconditional and not dependent upon Kahn finding a third-party purchaser. In August Kahn, after receiving a conditional FHA mortgage commitment of $25,750, initially offered to buy the residence for a gross figure of $22,000 but ultimately offered $21,000 net, a price which petitioner believed to be fair. Kwatinetz, who was increasingly anxious to sell because of a planned move to her son's vacated apartment, eventually accepted that offer. After the acceptance was orally communicated by petitioner to Kahn, the latter then contacted other brokers in an effort to obtain a third-party purchaser for the home. Kahn made certain repairs to the interior of the premises and also painted the exterior. In October petitioner became aware of the fact that Kahn had a buyer for $28,750 when his office was asked to prepare a sales contract for Kahn. Contracts for the sale from Kwatinetz to Kahn and for the resale by Kahn were all drawn in petitioner's office. The closings were simultaneously held in petitioner's office. At the Kwatinetz closing, she approved in writing petitioner's commission check for $1,200. Respondent found petitioner guilty of demonstrated untrustworthiness on the basis that petitioner failed to earn his commission and failed to disclose the FHA mortgage commitment and the resale price to Kwatinetz. While the Legislature has conferred on the Department of State wide discretion in determining what conduct constitutes demonstrated untrustworthiness, that

determination must rest- on substanial evidence based on a factual presentation of acts or conduct by the licensee warranting a conclusion that the licensee is unreliable and establishing that any confidence or reasonable expectation of fair dealing to the general public would be misplaced. (*Matter of Gold* v. *Lomenzo*, 29 N Y 2d 468, 477.) Inasmuch as petitioner produced prospective buyers, introduced Kahn, the purchaser, to Kwatinetz, and on her behalf negotiated an unconditional agreement between the parties, the finding that petitioner failed to earn his commission is not based on substantial evidence. There is no evidence that petitioner acted in bad faith or in furtherance of his own undisclosed interests at the time. Nor is there evidence that petitioner represented both principals, or even that petitioner benefited from the resale. While we are critical of petitioner's failure to inform his client of the amount of the mortgage commitment and the resale price, this error in judgment does not justify a determination that petitioner is untrustworthy. Concur — Kupferman, J. P., Lupiano and Yesawich, JJ.; Murphy and Capozzoli, JJ., dissent in the following memorandum by Capozzoli, J.: It is settled law, requiring no citation of authorities, that questions of fact are to be resolved by the administrative body, in this case the Secretary of State, and that such body is authorized to draw inferences reasonably flowing from what it determines to be the truth. The hearing demonstrated, beyond question, that petitioner, who was acting as lawyer and broker for his client, did not disclose to her that her house, which was about to be sold for $21,000, was to be resold immediately for $28,750. He denied that he knew about it. An examination of the record discloses that the petitioner testified as follows: " A. I never saw this contract. I never saw this contract. Q. Did you prepare this contract? A. No, sir." He further testified: " Q. Did you have anything to do with that contract; did you prepare it? A. No." Yet the evidence clearly demonstrates that the contracts of sale by his client to Kahn and by Kahn to Gumbs, were both drawn in petitioner's office. Both contracts were drawn under his direction and the price of each sale was clearly set forth in each contract. All of this is conceded by the majority. Petitioner also denied any knowledge of the amount of the FHA conditional commitment obtained by Kahn. In this he is contradicted by the testimony of Kahn, which appears in the record as follows: " Q. You got a commitment August 25, 1970 and you knew then what you could offer the property for sale for and evaluate your expenses; is that correct? A. Yes. Q. Did you inform Mr. Hiltzik what the FHA evaluation was? A. Yes, sir. Q. When did you inform him? A. Probably August 25 or August 26." A careful review of this record leads to the conclusion that the determination of the hearing officer is supported by substantial evidence and it was not arbitrary or capricious. Therefore we would confirm.